**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

GERMAINE WIGGINS,

                    Plaintiff

      v.

PENNSYLVANIA DEPARTMENT OF
CORRECTIONS MEDICAL
DEPARTMENT, *et al.*,

             Defendants.

CIVIL ACTION NO. 3:24-CV-01976

(MEHALCHICK, J.)

## MEMORANDUM

Plaintiff Germaine Wiggins alleges he has been denied adequate treatment for his diabetes and back injuries at the Dauphin County Prison and three state prisons. Because the complaint as pled fails to state a claim for relief, Wiggins will be granted 30 days to file an amended complaint.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On November 15, 2024, the Court received and docketed a complaint from Wiggins, currently incarcerated at SCI-Huntingdon. (Doc. 1). He names five defendants: the "Medical Department[s]" of the Pennsylvania Department of Corrections, the Dauphin County Prison, SCI-Smithfield, SCI-Camp Hill, and SCI-Huntingdon. Wiggins seeks leave to proceed *in forma pauperis*. (Doc. 2).

Wiggins's complaint alleges as follows: Prior to his incarceration, he sustained injuries to his back, neck, shoulders, and hips in two car accidents, causing severe pain and requiring ongoing treatment. Since April 22, 2024, he has been incarcerated at the Dauphin County Prison, SCI-Smithfield, SCI-Camp Hill, and SCI-Huntingdon.

Upon arrival at the Dauphin County Prison, Wiggins advised the intake staff of his injuries, ongoing pain, and treatment recommendations from previous doctors. Nonetheless, he was assigned to sleep on a top bunk, without a ladder to climb down. As a result, he "hurt [him]self more & more getting in & out of bed." Eventually, he complained to a nurse and was granted a bottom bunk. However, he was also placed on the top tier of the prison, which forced him to walk up and down stairs and aggravated his injuries.

Wiggins received only pain medications, with no further treatment. He was told by an unnamed nurse that the "medical department didn't have the equipment to facilitate physical therapy," and that "medical resources were scarce." Wiggins also alleges that he has diabetes, and the prison refused to provide "regular diabetic blood sugar checks, if any at all." He was denied a diabetic diet, diabetic "snack bags," and insulin, and suffered "pains; shocks; dizzy spells[; and] delusional spells."

On May 30, 2024, Wiggins was transferred to SCI-Smithfield. Upon arrival, he underwent "two days of 6-8 hour medical examination." Wiggins told the examining medical staff about his injuries, and prior treatment recommendations for physical therapy and "[epidural] shots." He received the same pain medication he had been taking at the Dauphin County Prison. Aside from pain medication, he "didn't receive any medical attention" at SCI-Smithfield, despite putting in "a medical sick call for the pain." He was again housed on the top tier of the prison.

On June 26, 2024, Wiggins was transferred to SCI-Camp Hill, where he reported "his pains, his injuries and serious medical needs" to unnamed staff. However, he was denied blood sugar tests, diabetic snack bags, and "diabetic shoes" he had requested. He was housed

on the second floor, which he describes as a "pain risk factor." Again, he was limited to the same pain medication he had been receiving at the previous prisons.

On July 19, 2024, Wiggins was transferred to SCI-Huntingdon. Wiggins again went through an intake process, during which he told an unnamed member of the medical staff that he was "in pain all day," "supposed to be receiving treatment" for his back and shoulder, and needed "lower bunk" status. Nonetheless, he was placed in a top bunk on the third floor, and had to walk up several flights of stairs at least 4-5 times per day. He was later moved to the Restricted Housing Unit, sometimes receiving treatment through "food slots" or "food ports" rather than being taken to the medical unit. His blood sugar levels were tested twice a week, but he believes they should have been tested three times a day. Nurse Kristy Gross (not named as a defendant) "refused to check" his blood sugars and "refused to treat" his low blood sugar if it dropped below its normal range.

Wiggins never received "follow-ups" for his medical care unless he requested them. Wiggins remains in "serious pain," and has submitted medical sick call slips, inmate request slips, and "over [30] medical grievances for inadequate medical care." These grievances, and his appeals, were all "denied for one reason or another." Unnamed "practitioner nurses" told Wiggins that they "did not have the proper medical staff[] or facility" to treat him. Wiggins asserts Eighth Amendment claims for denial of adequate medical care, and seeks monetary and injunctive relief.

## II.    28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed.

App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can

only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.  DISCUSSION

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

Here, Wiggins's Eighth Amendment claims against the DOC and prison "medical departments" cannot proceed as pled because these entities are not subject to suit under Section 1983. *See Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845 (3d Cir. 2011) ("The District Court properly concluded that Ruff cannot sue SCI–Coal Township or the prison's medical department itself because these entities are not 'persons' under § 1983."); *Ortiz v. Dep't of Corr.*,

No. 1:07-CV-0208, 2007 WL 906179, at *1 (M.D. Pa. Mar. 22, 2007) (collecting cases observing that the "DOC, prisons, and prison medical departments[] are not 'persons' for purposes of a civil rights action").

The Court will permit Wiggins to file an amended complaint on a form provided by the clerk. *See Grayson*, 293 F.3d at 108. The amended complaint must be a stand-alone document that does not refer to the previous complaint. Wiggins may attach medical records, or other documentation of the defendants' actions, if it helps to explain his allegations. General statements of Eighth Amendment law and citations to cases are not necessary.

To state an Eighth Amendment claim for injunctive relief (i.e., to address ongoing complaints about medical care), Wiggins must name a defendant who would be "responsible for ensuring that any injunctive relief is carried out." *See Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016) (quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)). To state an Eighth Amendment claim for monetary damages, he must allege facts indicating that the defendant(s) believed they were putting him at a substantial risk of serious harm. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An allegation that prison medical staff did not follow the recommendations of other doctors, or did not follow a plaintiff's requested course of treatment, does not itself state an Eighth Amendment claim. *See James v. Pennsylvania Dep't of Corr.*, 230 F. App'x 195, 197-98 (3d Cir. 2007); *see also King v. Cnty. of Gloucester*, 302 F. App'x 92, 97 (3d Cir. 2008) ("Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment.").

**IV.    CONCLUSION**

Because the complaint as pled does not state a claim, Wiggins will be granted 30 days

to file an amended complaint. *Grayson*, 293 F.3d at 108. An appropriate Order follows.


Dated: December 17, 2024                          */s/ Karoline Mehalchick*
                                                  _____
                                                  **KAROLINE MEHALCHICK**
                                                  **United States District Judge**