UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERMAINE WIGGINS,<br><br>        Plaintiff<br><br>    v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS MEDICAL DEPARTMENT, *et al.*,<br><br>        Defendants. | CIVIL ACTION NO. 3:24-CV-01976<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Germaine Wiggins has filed an amended complaint alleging that he has been denied adequate medical treatment at the Dauphin County Prison and three state prisons. Because the amended complaint does not state a plausible claim for relief, and granting further leave to amend would be futile, the Court will dismiss the complaint and close this case.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The Court permitted Wiggins to file an amended complaint after his original complaint failed to state a claim. *See* (Doc. 9). Wiggins was granted until June 7, 2025, to file the amended complaint. (Doc. 18). He then filed a "Motion to Respond to Order" (Doc. 19), indicating that he wanted to proceed on a version of the complaint attached to a prior motion. The Court therefore construes the referenced document (Doc. 17-1) as the amended complaint, and the other attachments to that motion as attachments to the complaint.

The complaint alleges as follows: On April 22, 2024, Wiggins was sentenced in the Court of Common Pleas of Dauphin County to a term of incarceration. The sentencing order included the following statement: "We would ask that defendant's classification take into consideration the back issues he is having in order to go to an appropriate facility to address

all medical concerns." (Doc. 17-2 at 2). The order indicates that copies were served to "Dauphin County Prison Records" and "State Correctional Institution." *See* (Doc. 17-2 at 3).

Since being sentenced, Wiggins has been incarcerated at the Dauphin County Prison, SCI-Smithfield, SCI-Huntingdon, and SCI-Camp Hill. He alleges that the sentencing order gave these facilities "notice about [his] medical concerns, issues, & needs," and that he "gave . . . proper notice to each individual facility upon arrival[] that he was in pain & he had [extensive] & [multiple] injuries." He claims he has been "deprived of adequate medical care & treatment for his serious medical injuries . . . [which] aggravates and worsens" these injuries. Wiggins does not clearly describe the injuries, or the treatment that he was allegedly denied. He "has had two sets of x-rays in two different facilities, but [has not] seen a doctor or a specialist outside the normal prison nurses." He alleges that he has had a dislocated shoulder for over 10 months, that x-rays show "huge gaps & separations . . . in between the back & hip joints," and that he is developing arthritis. He has been in "ongoing & constant pain[] for over 10 months," which has caused him sleepless nights and allegedly caused him to develop PTSD.

Wiggins also objects to the treatment he receives for his diabetes, because he "never knows w[h]ere his sugar levels are at." He is prescribed metformin, which he "refuse[s] to take because [he] only gets [two] blood sugar checks a week." His fingers and toes are "constantly tingling" and his joints "constantly ache."

The Court has also reviewed Wiggins's attachments to the complaint, including medical and grievance records, to ascertain any potential claim for relief. As relevant here, they indicate as follows:

- In October 2024, Wiggins complained to staff that an unspecified medication had not been refilled and "the prison is acting like I don't have injuries[,] like I'm not in serious pain every day." On October 22, a staff member responded that Wiggins had active prescriptions for ten different medications. Two other prescriptions had expired during the previous month, and Wiggins was told that he could address those by placing a sick call to ask the providers to potentially renew the orders. (Doc. 17-3 at 9-10).

- In October 2024, Wiggins complained that the "medical facility want[s] to play games" with his "diabetes and chronic health." He allegef that his "diabetic checks" were being "stopped," that he "need[s] to know w[h]ere his blood sugar is at all times," and that it should be checked three times a day. A staff member responded that his blood sugar was checked two days per week, on days when he received insulin, and that he could place a sick call to further discuss the issue with a medical provider. (Doc. 17-3 at 11). In response to a grievance on this topic, a provider noted that Wiggins had not made a sick call as instructed. The provider indicated that diabetic checks two days per week were appropriate given Wiggins's "stable" blood sugar levels, based on 182 tests over the preceding months. (Doc. 17-6 at 2).

- In November 2024, Wiggins complained that his weight had dropped from "267-265-263" pounds to "250-245" pounds because of the prison diet. He alleges that his blood sugar was low because he only got "3 basic meals" per day on a "timed schedule," which he described as "[half-]proportional." *See* (Doc. 17-3 at 14, 17). On January 28, 2025, after a sick call the previous day, a

3

provider noted that Wiggins would receive a supplemental "diet bag order" through July 30, 2025. (Doc. 17-2 at 4).

Wiggins seeks to "hold[] the individual . . . staff members & department personnel as a whole" responsible for the alleged lack of medical treatment. He names dozens of prison departments and groups of individuals as defendants, essentially including all medical personnel at each of the four prisons.[1] Although the list refers to various "departments" as well as "doctors," "nurses," "staff members" and other kinds of "personnel," no single individual is identified among the defendants.

## II.    28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal

---

[1] Among the named defendants are the following entities within the Department of Corrections: "Administration's Department," "Individual Capacity Staff Members," "Department Personnel Members," and "Classifications Department & Records Department, including Medical (CHCA) Department." Within the Dauphin County Prison alone, the defendants include the "Administration Department, Records Department, & Classifications Department," "Staff Members," "Personnel Members," "All Doctors, Physicians, Nurses, Nurse Practitioners, Medical Specialists, Medical Examiners, Medical Assistants," and "all other Medical Personnel." Similar lists are offered for SCI-Smithfield, SCI-Camp Hill, and SCI-Huntingdon.

4

Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor

need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an

amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

**III.   DISCUSSION**

The Court construes Wiggins as asserting Eighth Amendment claims premised on denial of medical care or deliberate indifference to a serious medical need. However, he fails to state a claim for the reasons described in the Court's memorandum (Doc. 8) addressing the prior complaint. As previously explained, Wiggins's Eighth Amendment claims against the DOC and various prison "departments," including medical departments, cannot proceed as pled because these entities are not "persons" subject to suit under Section 1983. *See Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845 (3d Cir. 2011) ("The District Court properly concluded that Ruff cannot sue SCI–Coal Township or the prison's medical department itself because these entities are not 'persons' under § 1983."); *Ortiz v. Dep't of Corr.*, No. 1:07-CV-

0208, 2007 WL 906179, at *1 (M.D. Pa. Mar. 22, 2007) (collecting cases observing that the "DOC, prisons, and prison medical departments[] are not 'persons' for purposes of a civil rights action").

Nor can Wiggins state a claim by grouping individuals in laundry list form (*i.e.*, "Doctors, Physicians, Nurses, Nurse Practitioners, Medical Specialists, Medical Examiners" and all "Medical Personnel") and alleging that they all "denied" him medical care. The complaint does not identify which individuals were responsible for Wiggins's medical care or how they were personally involved in the alleged violations. *See*, *e.g.*, *Abdullah v. Briggs*, No. 4:24-CV-00225, 2024 WL 2902328, at *2 (M.D. Pa. June 10, 2024) (rejecting plaintiff's attempt to "lodge identical allegations against every named defendant" through a "list of legal conclusions . . . without pleading facts that would plausibly state the elements of these claims"). As previously explained, a plaintiff states an Eighth Amendment claim by alleging facts showing that a particular defendant knew they were putting the plaintiff at substantial risk of serious harm. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Wiggins seeks to impute deliberate indifference from the prisons' receipt of his sentencing order, but he does not plead facts showing that any individual was aware of the sentencing order, nor explain how the order's single reference to "back issues" would put any defendant on notice that a particular treatment offered to Wiggins was inadequate.

In keeping with the requirement to broadly construe *pro se* pleadings, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court has reviewed Wiggins's attachments to identify any proper defendants for an Eighth Amendment claim. However, the attachments do not indicate deliberate indifference by any of the providers named therein. Contrary to his

repeated allegations[2] that he is being "deprived of" medical treatment, the attachments indicate that he was receiving at least 10 different medications, that his diabetes is being monitored in a manner consistent with providers' assessment of his blood sugar levels over time, and that sick calls were offered to him to address further concerns. Wiggins has no Eighth Amendment right to dictate the type of medication he receives, how the medical providers should interpret his x-ray results, how often his blood sugar is checked, or "what type of doctors or nurse practitioners [he] would like to see." At most, the attachments indicate Wiggins's disagreement with the treatment being offered, or that his treatment differs from what he received prior to incarceration, neither of which sustains an Eighth Amendment claim. *See James v. Pennsylvania Dep't of Corr.*, 230 F. App'x 195, 197-98 (3d Cir. 2007); *see also King v. Cnty. of Gloucester*, 302 F. App'x 92, 97 (3d Cir. 2008) ("Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment.").

IV. **CONCLUSION**

Because Wiggins has submitted two complaints that were subject to dismissal for essentially the same reasons, the Court finds that granting further leave to amend would be futile. *See Grayson*, 293 F.3d at 108. Accordingly, the Court will dismiss this complaint and close this case. An appropriate order follows.

**Dated: April 18, 2025**                            *s/ Karoline Mehalchick*
                                                       **KAROLINE MEHALCHICK**
                                                       **United States District Judge**

---

[2] To the extent Wiggins's exhibits contradict his allegations in the body of the complaint, the exhibits control for purposes of evaluating the complaint. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).